IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

JARON GRANT,                          )
                                      )
            Plaintiff,                )
                                      )
v.                                    )      Case No. 7:05-CV-2330-TMP
                                      )
OFFICER DARRELL McKINSTRY,            )
                                      )
            Defendant.                )

## MEMORANDUM OPINION

This cause is before the court on the defendant's motion for summary judgment (Doc. 41),

filed January 26, 2007. The plaintiff responded to this motion, as well as a similar motion previously

filed by another defendant. (Docs. 46 & 47). Defendant McKinstry, in his *individual* capacity, is

the only remaining defendant in this action, and it is his motion that is now pending.[1] Defendant

McKinstry supported his motion by reference to the evidentiary materials previously submitted in

support of the motion for summary judgment filed by the City of Tuscaloosa. (See Doc. 40).

Summary Judgment Standards

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

---

[1]      All other defendants have been dismissed on stipulation, including the City of
Tuscaloosa. The dismissal of the City also had the effect of dismissing the claim against McKinstry
in his *official* capacity, since official capacity suits are simply another way of pleading the action
against the defendant's public employer. See Kentuck v Graham, 473 U.S. 159, 105 S. Ct. 3099, 87
L. Ed. 2d 114 (1985). Thus, logically, the dismissal of the City as a defendant necessarily means the
dismissal of the official-capacity claims against KcKinstry, because, otherwise, the City would
remain a defendant through that vehicle.

show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Celotex, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." Id. at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, she may not merely rest on her pleadings. Celotex, 477 U.S. at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is

entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The substantive law will identify which facts are material and which are irrelevant.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id. at 248.  "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Id. at 249.  His guide is the same standard necessary to direct a verdict:  "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 251-52; see also Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 745 n.11 (1983).  However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  Anderson, 477 U.S. at 249 (citations omitted); accord Spence v. Zimmerman, 873 F.2d 256 (11th Cir. 1989).  Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff.  Anderson, 477 U.S. at 254; Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988).  Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor.  Anderson, 477 U.S. at 255.  The non-movant need not be given the benefit of every inference but only of every reasonable inference.  Brown v. City of Clewiston, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

<u>Undisputed Facts</u>

Applying these standards to the evidence before the court, the following facts appear to be undisputed or, if disputed, are taken in a light most favorable to the defendant.  On November 12, 2003, a high school basketball tournament was being hosted by Central High School-East in Tuscaloosa, Alabama.  A $3.00 admission price was being charged to enter the gymnasium to watch the games.  A placard was placed in the tinted window of the front door of the gym, prominently stating, "NO PASSES OUT," consistent with Tuscaloosa Board of Education policy.  Patrons entering the gym for the tournament would go through the door on which the placard was affixed.

Although no longer a student in the Tuscaloosa schools, having dropped out of the ninth grade in the spring of 2003, plaintiff Grant was invited by a basketball player in the tournament to come watch the player's game.  With approximately $20 in his pocket, plaintiff, who was seventeen years old at the time, went to the game, paying the $3 admission price and receiving a ticket. Plaintiff did not "pay any attention to" the placard in the window of the door.  At halftime of the game, plaintiff went back outside the gym to smoke a cigarette, and when he attempted to re-enter, a school employee selling tickets told plaintiff that he had to pay to get in.  Plaintiff protested that he had paid to get in before and that he had a ticket stub to prove that he had already paid.  The school employee, Mr. Swann, indicated that plaintiff had gotten the ticket stub from someone outside and that he was trying to sneak into the game.  Mr. Swann told the plaintiff that he either had to pay or leave, and he pointed to the placard in the window of the door.  Although plaintiff decided in his own mind to pay the admission price a second time, he did not say that to Mr. Swann, but continued to delay, digging through his pockets.  Mr. Swann then called for "security."

Security at the tournament was being provided by the Tuscaloosa police department.  The officers present were "on-duty" officers because there had been a history of violence and disruption at public events at the high school.  On earlier occasions, when violence erupted, some people had left the school grounds and returned with weapons.  Officer McKinstry came over to where Mr. Swann was seated at a desk selling tickets near the front door.  Plaintiff and Officer McKinstry did not know each other.  Mr. Swann explained that plaintiff was refusing to pay the admission price and was refusing to leave.  Plaintiff responded that he had already paid the admission and had a ticket stub.  Both Officer McKinstry and Mr. Swann pointed to the placard, and said that plaintiff either had to pay or leave.  Officer McKinstry told plaintiff just to pay the admission.  Plaintiff then responded by asking Officer McKinstry, in a tone of voice that he admits probably made Officer McKinstry think he was "trying to be smart," "Can I borrow a dollar?"  At the time, plaintiff had approximately $17 on him.  Instead of lending plaintiff a dollar, Officer McKinstry stated, "I'm going to escort you off campus."

Without touching plaintiff in any way, Officer McKinstry escorted plaintiff back out the front door of the gym and down the front steps.  As plaintiff was walking toward the Burger King, Officer McKinstry said to him, "You little niggers don't know how to act when you go out in public."  Both plaintiff and Officer McKinstry are African-American.  Plaintiff responded, saying, "What you talkin' about?"  Officer McKinstry then reached out and "touched" the back of plaintiff's collar, causing him to turn around and face the defendant.  At the time, plaintiff was about five foot-five inches tall and weighed about 200 pounds.[2]  Officer McKinstry then took the plaintiff by the left arm,

---

[2]        The court notes that a medical examination by Dr. John Buckley just a nine days after the incident reported that plaintiff was 68 inches tall (five feet-eight inches) and weighed 173 pounds.

put it behind plaintiff, and began handcuffing him.  Plaintiff did not struggle or resist, but complained that the handcuffs were too tight.  Officer McKinstry checked the handcuffs and determined that they were not too tight.

Officer McKinstry escorted the plaintiff back into the gym, walking down a hallway toward the rear parking lot where his police cruiser was parked.  While in the hallway, plaintiff continued to complain that the handcuffs were too tight and that Officer McKinstry was "squeezing" them.  He almost cried and almost urinated on himself from the pain.  People in the basketball game began to call out plaintiff's name, asking him what he had done to be arrested.  Plaintiff was embarrassed and simply hung his head.

When Officer McKinstry and plaintiff exited the rear door of the gym, plaintiff was walked to Officer McKinstry's car, where he was pushed against the hood and searched.  Officer McKinstry said, "Where are the drugs?  I know you have drugs."  No drugs were found, and plaintiff was placed in the front seat of the police cruiser.  The space in the front seat was cramped, and plaintiff had to sit awkwardly.  Officer McKinstry rolled down the window next to plaintiff, and he hung his head outside the window during the ten-minute ride to the police station.

Upon arrival at the police station, Officer McKinstry escorted the plaintiff inside and removed the handcuffs.  He then checked to determine if plaintiff had any outstanding warrants, and when none was found, he decided to release plaintiff without charges.  Plaintiff was allowed to use a telephone to call his brother to pick him up at the station.  Plaintiff's brother and a female picked up plaintiff and transported him to DCH Medical Center in Tuscaloosa, because he was complaining of pain in his wrist.  The brother and female dropped plaintiff at the hospital and left.

Plaintiff was examined in the emergency room.  A nurse noted that his left wrist was slightly swollen, but there was no apparent injury or abrasion.  Plaintiff had a small scratch on his right wrist. An emergency room physician determined that x-rays of the left wrist revealed a "small chip fracture" of the radius, and he applied a "sugar-tong splint" to the wrist.  Subsequent interpretation of the same x-rays by a radiologist, however, showed "[n]o abnormality of the left wrist....  No underlying fracture."  Later examination by Dr. John Buckley determined that plaintiff has "a tiny area of ecchymosis[3] about 2 mm wide by 2cm long" near his wrist, with tenderness and "very little swelling."  This was treated with a "short-arm" cast from November 21 to December 16, 2003.

<u>Discussion</u>

Three of the seven counts in plaintiff's amended complaint allege causes of action against defendant McKinstry in his individual capacity: Counts I, VI, and VII.  The remaining counts related to defendants no longer before the court.  In Count I of the complaint, the plaintiff alleges that he was subjected to unreasonable and excessive force, in violation of his rights under the Fourth and Fourteenth Amendments, for which an action under 42 U.S.C. § 1983 will lie.  In Count VI, he alleges another violation of his constitutional rights, in that he was subjected to false imprisonment. The court reads this count as alleging that his arrest by Officer McKinstry, regardless of the degree of force used to effect it, was illegal and unconstitutional.  Finally Count VII alleges a supplemental jurisdiction claim under Alabama law for assault and battery.  The court will address first the legality of the arrest, followed by whether the degree of force used was excessive and unreasonable.

---

[3]       Ecchymosis is a bruise or discoloration of the skin.

A.  The Arrest

The first claim to be addressed is whether Officer McKinstry is liable to plaintiff for an illegal arrest without probable cause.  This entails both whether the arrest was without probable cause and, even if so, whether Officer McKinstry is shielded by the defense or qualified immunity.

At the outset, there is no violation of the Fourth Amendment if a law-enforcement officer makes an arrest on probable cause.  The courts have explained:

> An arrest does not violate the Fourth Amendment if a police officer has probable cause for the arrest.  See Lee [v. Ferraro, 284 F.3d 1188, 1194-95 (11th Cir. 2002)]; Ortega v. Christian, 85 F.3d 1521, 1525 (11th Cir. 1996); Von Stein v. Brescher, 904 F.2d 572, 578 (11th Cir. 1990).  "For probable cause to exist, … an arrest must be objectively reasonable based on the totality of the circumstances."  Lee, 284 F.3d at 1195.  "This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense."  Rankin v. Evans, 133 F.3d 1425, 1435 (11th Cir. 1998) (internal quotation marks omitted).  "Although probable cause requires more than suspicion, it does not require convincing proof, and need not reach the [same] standard of conclusiveness and probability as the facts necessary to support a conviction."  Lee, 284 F.3d at 1195 (internal quotation marks and citations omitted).

Wood v. Kesler, 323 F.3d 872, 878 (11th Cir. 2003); see Durruthy v. Pastor, 351 F.3d 1080 (11th Cir. 2003); Knight v. Jacobson, 300 F.3d 1272 (11th Cir. 2002).  Moreover, the subject intent of the officer making the arrest is irrelevant to the legality of the arrest.  The standard is an objective one, focused not on what is motivating the officer, but on whether the totality of circumstances warrants a finding of probable cause.  In Durruthy, the court of appeals emphasized:

> [Officer] Pastor's personal motivation for arresting Durruthy is irrelevant to the determination whether she had probable cause.  There is no question that an officer's

8

subjective intent is immaterial when there is an objectively reasonable basis for believing that an offense has occurred.  See, e.g., Whren v. United States, 517 U.S. 806, 813, 116 S. Ct. 1769, 1774, 135 L. Ed. 2d 89 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."); United States v. Holloman, 113 F.3d 192, 194 (11th Cir. 1997) ( per curiam) ("[ Whren] conclusively refutes the notion that ulterior motives may invalidate police conduct that is justified on the basis of probable cause to believe that a violation of law has occurred."); see also Holland v. City of Portland, 102 F.3d 6, 9-10 (1st Cir. 1996) (following Whren's holding with respect to subjective intent in probable cause determinations); United States. v. Dhinsa, 171 F.3d 721, 724-25 (2d Cir. 1998) (same); Rogers v. Powell, 120 F.3d 446, 453 n. 5 (3d Cir. 1997) (same); United States v. Bullock, 94 F.3d 896, 899 (4th Cir. 1996) (same); United States v. Escalante, 239 F.3d 678, 680-81 (5th Cir. 2001) (same); United States v. Herbin, 343 F.3d 807, 809-810 (6th Cir. 2003) (same); Williams v. Vasquez, 2003 WL 1796030, *4-*5, 62 Fed. Appx. 686, 690-91 (7th Cir. 2003) (same); Johnson v. Crooks, 326 F.3d 995, 998 (8th Cir. 2003) (same); United States v. Ibarra, 345 F.3d 711, 713-14 (9th Cir. 2003) (same); United States v. Villa-Chaparro, 115 F.3d 797, 801 (10th Cir. 1997) (same); United States v. Bookhardt, 277 F.3d 558, 565-66 (D.C. Cir. 2002) (same); Arkansas v. Sullivan, 532 U.S. 769, 771-72, 121 S. Ct. 1876, 1878, 149 L. Ed. 2d 994 (2001) (rejecting Arkansas Supreme Court's finding that the "subjective intent" language in Whren was nonbinding dicta).

Durruthy v. Pastor, 351 F.3d 1080, 1088 n.5 (11th Cir. 2003).

In the instant case, the court has little difficulty concluding that Officer McKinstry possessed probable cause to arrest the plaintiff.  Alabama statutory law defines the violation of trespass as, "A person is guilty of criminal trespass in the third degree when he knowingly enters or remains unlawfully in or upon premises."  Alabama Code § 13A-7-4 (1975).  Similarly, misdemeanor second-degree trespass is defined as, "A person is guilty of criminal trespass in the second degree if he knowingly enters or *remains unlawfully in a building* or upon real property which is fenced or enclosed in a manner designed to exclude intruders."  Alabama Code § 13A-7-3 (1975) (Italics added).  Further, the term "enters or remains unlawfully" is defined this way:

9

A person "enters or remains unlawfully" in or upon premises when he is not licensed, invited or privileged to do so. *A person who, regardless of his intent, enters or remains in or upon premises which are at the time open to the public does so with license and privilege unless he defies a lawful order not to enter or remain, personally communicated to him by the owner of such premises or other authorized person.* A license or privilege to enter or remain in a building which is partly open to the public is not a license or privilege to enter or remain in that part of the building which is not open to the public. A person who enters or remains upon unimproved and apparently unused land, which is neither fenced nor otherwise enclosed in a manner designed to exclude intruders, does so with license and privileges unless notice against trespass is personally communicated to him by the owner of such land or other authorized person, or unless such notice is given by posting in a conspicuous manner.

Alabama Code § 13A-7-1(4) (1975) (Italics added).

The undisputed facts in this case show that plaintiff first entered the gymnasium under a license purchased by the price of admission to the tournament. That license, however, was subject to the limitation of "NO PASSES OUT," making it terminable upon the licensee's leaving the gym. Thus, when plaintiff went outside to smoke, his license to enter the gymnasium terminated, and he was required to purchase a new license to return. When he expressed reluctance, a person authorized by the Tuscaloosa Board of Education (Mr. Swann) personally informed plaintiff that he had to leave. All of this was witnessed by Officer McKinstry. He himself attempted to persuade plaintiff to purchase a new ticket, but instead was presented with the rude request by plaintiff to "borrow a dollar." Officer McKinstry possessed personal knowledge that Mr. Swann instructed plaintiff to "pay or leave," and when plaintiff did not pay, he became a trespasser, unlawfully remaining in a building after being instructed to leave. Thus, Officer McKinstry had probable cause to arrest plaintiff for trespassing.

10

The fact that Officer McKinstry initially escorted plaintiff from the building with no intention to arrest him does not change the Fourth Amendment probable cause analysis. Nor does the fact that Officer McKinstry called plaintiff a "nigger" change the analysis.[4]  The subjective intent or motivation of the arresting officer is immaterial to the legality of the arrest. That he changed his mind about making the arrest, or that he may have possessed some racial animus, does not alter the objective facts upon which probable cause was based.

But even if Officer McKinstry lacked real probable cause to arrest plaintiff for trespassing, he is entitled to qualified immunity from liability to the extent that he had "arguable probable cause." Von Stein v. Brescher, 904 F.2d 572, 578 (11th Cir. 1990). In Montoute v. Carr, 114 F.3d 181 (11th Cir. 1997), the court of appeals reiterated this rule:

> In order to be entitled to qualified immunity from a Fourth Amendment claim, an officer need not have actual probable cause but only "arguable probable cause," i.e., the facts and circumstances must be such that the officer reasonably could have believed that probable cause existed. See Williamson v. Mills, 65 F.3d 155, 158 (11th Cir. 1995) ( "to enjoy qualified immunity [the officer] need only have had arguable probable cause" ); Pickens v. Hollowell, 59 F.3d 1203, 1206 (11th Cir. 1995) ( "the appropriate inquiry for qualified immunity is ... whether there was arguable probable cause" ); Swint, 51 F.3d at 996 ( "[w]hen a law enforcement officer seeks summary judgment on the basis of qualified immunity, we must only ask whether ... there was arguable probable cause" ); Eubanks v. Gerwen, 40 F.3d 1157, 1160 (11th Cir. 1994)("In the case involving a warrantless search and seizure, ... whether qualified immunity ... exist[s] turns upon whether there was 'arguable' probable cause ...." ).
>
> We have repeatedly held that because only arguable probable cause is required, the inquiry is not whether probable cause actually existed, but instead whether an officer

---

[4]     The court specifically observes that plaintiff has not alleged a Fourteenth Amendment equal protection claim against Officer McKinstry. His only claim in this regard is a Fourteenth Amendment claim of due process, incorporating the Fourth Amendment probable cause requirement for arrest. He has not alleged that Officer McKinstry arrested plaintiff due to an invidious racial animus, plainly because such an allegation flies in the face of the fact that Officer McKinstry is an African-American also.

reasonably could have believed that probable cause existed, in light of the information the officer possessed.  See, e.g., Hunter v. Bryant, 502 U.S. 224, 228, 112 S. Ct. 534, 537, 116 L. Ed. 2d 589 (1991) (holding that secret service officers were entitled to qualified immunity "if a reasonable officer could have believed that probable cause existed to arrest [the plaintiff]" ); Eubanks, 40 F.3d at 1160 (holding that the standard for arguable probable cause is "whether a reasonable officer ... could have reasonably believed that probable cause existed ...." ).  "Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." Hunter, 502 U.S. at 227, 112 S.Ct. at 536 (quoting Anderson v. Creighton, 483 U.S. 635, 641, 107 S. Ct. 3034, 3040, 97 L. Ed. 2d 523 (1987)) (internal quotations marks omitted).  Thus, the qualified immunity standard is broad enough to cover some "mistaken judgment," and it shields from liability "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 343, 106 S. Ct. 1092, 1096-97, 89 L. Ed. 2d 271 (1986).

Id. at 184.  Plainly, given the plaintiff's refusal, however temporary, to "pay or leave" the gymnasium, as instructed by Swann, Officer McKinstry could have reasonably believed that he possessed probable cause to arrest the plaintiff for trespassing.  Thus, he is entitled to qualified immunity with respect to the allegation that the plaintiff's Fourth Amendment seizure was illegal.

### B.  The Force Used

Once the court concludes that Officer McKinstry did not violate the Fourth Amendment by "seizing" the plaintiff for arrest, it is clear that, in effecting the arrest, he was entitled to use some degree of force necessary under the circumstances.  Graham v. Connor, 490 U.S. 386, 109 S. Ct. 1865, 1870-71, 104 L. Ed. 2d 443 (1989).  Here, the only "force" alleged by the plaintiff is that the handcuffs placed on him were too tight.  He agrees that Officer McKinstry did not strike him, kick him, wrestle with him, or use any other form of force or weapon.  He does not even assert that Officer McKinstry was unduly rough in pushing his arms behind his back to be handcuffed.  Rather, all that he complains about is that the handcuffs were too tight.  Painful handcuffing, without more,

however, does not amount to unconstitutional excessive force.  See Rodriguez v. Farrell, 294 F.3d 1276 (11th Cir. 2002); Davis v. Lowers, 132 Fed. Appx. 302, 2005 WL 1220658 (11th Cir. 2005)("Painful handcuffing, without more, is not excessive force in cases where the resulting injuries are minimal").

The evidence suggests that plaintiff suffered a "small chip fracture" in his left wrist, but this alone is not enough to make Officer McKinstry's actions illegal.  There is no evidence that he used any unreasonable degree of force.  While plaintiff complains that the handcuffs were too tight, it is undisputed that Officer McKinstry checked the cuffs and determined that they were not too tight.  Under Graham, it cannot be said that no reasonable police officer would have used the degree of force used by Officer McKinstry.  The injury to plaintiff's wrist was minimal and plainly unintentional.

But even if one could question whether the handcuffs were too tight, Officer McKinstry is still entitled to qualified immunity on the excessive force claim.  As noted above, as early as 2002, the Rodriguez case informed officers that merely painful handcuffing, without more, did not rise to the level of excessive force.  Thus, in 2003, relying on Rodriguez, Officer McKinstry is entitled to qualified immunity on this claim as well.

C.  Alabama Assault and Battery Claim

Much of what has been said above applies with equal force to plaintiff's state assault and battery claim.  Under Alabama law, a police officer has the right to use reasonable and necessary force to effect a lawful arrest, and merely doing so does not amount to actionable assault and battery.  See Alabama Code § 13A-3-27(a)(1) (1975).  Furthermore, whether to effect an arrest or not

13

involved discretionary function immunity under Alabama law.  If there is "arguable probable cause" to make an arrest, Alabama law says the officer is shielded by the immunity, even if he was mistaken.  See Borders v. City of Huntsville, 875 So. 2d 1168 (Ala., 2003) (holding that "arguable probable cause" applies to discretionary function immunity).[5]

Officer McKinstry had probable cause to make the arrest, or at least "arguable probable cause," giving him discretionary function immunity against plaintiff's Alabama law claims.  The same evidence that constitutes probable cause for Fourth Amendment purposes constitutes probable cause for state law purposes, with the single added requirement under Alabama law that the misdemeanor must be committed in the officer's presence.  Here, the misdemeanor trespass was committed in Officer McKinstry's presence.  Further, the degree of force used — tight handcuffs — was not unreasonable under Alabama Code § 13A-3-27.  Once the court comes to the conclusion that the arrest was lawful and based on probable cause, there simply is no claim for assault and battery, or else all Alabama officers making lawful arrests can be sued simply for doing their duty.  Officer McKnistry is entitled to judgment on plaintiff's state-law claim also.

Conclusion

Based on the foregoing undisputed facts and conclusions of law, the court finds that there are no genuine issues of material fact and that Officer McKinstry is entitled to judgment as a matter of

---

[5]     Unlike the evidence in Borders, where it was disputed what the officer witnessed before making a misdemeanor arrest, there is no dispute in this case that Officer McKinstry witnessed plaintiff remaining in the gym after being told by Swann (in McKinstry's presence) to "pay or leave."  Even plaintiff admits that after being told to "pay or leave," he "took too long" to do either and never told them that he would pay.

law.  Accordingly, his motion for summary judgment will be granted and this case dismissed with

prejudice in a separate order.

DONE this 30th day of March, 2007.

T. MICHAEL PUTNAM
U.S. MAGISTRATE JUDGE